UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ELI ARCHER BLACKHOUSE,                )
                                      )
              Plaintiff,              )
                                      )
        v.                            )        Civ. No. 10-385-B-W
                                      )
TLC PROPERTIES, et al,                )
                                      )
              Defendants              )

**ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS* AND RECOMMENDATION REGARDING CIVIL RIGHTS COMPLAINT AND MOTION FOR A TEMPORARY RESTRAINING ORDER**

Eli Archer Blackhouse filed a pleading on September 15, 2010, entitled "Request for a Temporary Restraining Order" accompanied by a motion to proceed in forma pauperis. This thirty-one-page pleading was docketed as both his complaint (Doc. No. 1) and as a motion for a temporary restraining order (Doc. No. 2). Blackhouse has named twenty-three defendants including private businesses, medical care providers, the attorney general of the State of Maine, municipal and state entities/agencies, several federal agencies, the governor of the State of Maine, and the president of the United States. Blackhouse's complaint allegations center around his alleged abduction and torture in 2002 after being transferred to the Maine Medical Center, his wrongful confinement (by means of the extortion of excessive rent) in an apartment on Water Street in Gardiner, Maine, and recurring threats of assaults, arrest, and medical abuse. He states that "the City of Gardiner racketeers" seek to "obstruct FBI discovery of Mr. Blackhouse's status as a wrongfully-confined torture survivor repeatedly subjected to witness tampering and human

trafficking activity." (Pleading at 9.)[1] Blackhouse indicates that he has three harassment lawsuits which he is managing *pro se*. (Id. at 16.) Specifically, he refers to Blackhouse v. Connelly, KEN- 10-349 (Me.) indicating that he has charged "Tim and Laurie Connelly relative to Mr. Blackhouse's confinement and stalking victimization." (Id. at 20.) Black seeks extensive injunctive relief. For example, Blackhouse asks that this court convey control of the CIA to Blackhouse's consulting firm and dissolve the agency's "unduly restrictive relationship" with other arms of the United States government, and wants the court to insist on investigations into Washington, DC area facilities, the Department of Education's student loan program, and the public safety 911 dispatch in Kennebec County, Maine. (Id. at 17-18.)

I now grant Blackhouse's motion to proceed without prepayment of the filing fee. I further recommend that the Court deny the temporary restraining order and dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

**A.     Motion to Proceed *In Forma Pauperis***

In his motion to proceed in forma pauperis, Blackhouse represents that he receives $852 a month in Social Security disability payments but adds: "The equivalent of the entire monthly check is routinely extorted and laundered." (Doc. No. 4 at 1.) He states that he has five to eight dollars on hand to last through the month. He also indicates that he has significant personal and college-related debt "as the result of embezzlement and extortion victimization." (Id. at 2.)

---

[1]     Blackhouse refers to a "post 'P-6' conspiracy" and mentions "blue-papering" and Riverview/Augusta Mental Health Institution. (Pleading at 10 -11.) With regards to "P-6" Blackhouse indicates that it is a locked facility "being operated as a government-subsidized mental torture facility operating extra-judicially and will become the scene of additional psychiatric lynchings if the facility is not immediately closed." (Id. at 16.)

2

Based on these declarations I grant Blackhouse leave to proceed without prepayment of the filing fee.

**B.     Screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and Motion for Temporary Restraining Order**

With regards to a proceeding in forma pauperis such as this, the United States Congress has directed: "[T]he court shall dismiss the case at any time if the court determines that -- … (B) the action…-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under 28 U.S.C. § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989) (citing Franklin v. Murphy, 745 F.2d 1221, 1226 (9th Cir. 1984)); accord Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Mallard v. U.S. Dist. Ct. S. D. Iowa 490 U.S. 296, 307-308 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton, 504 U.S. at 33.

As the statutory authority for his action, Blackhouse cites 18 U.S.C. § 1201, the federal criminal kidnapping statute, 42 U.S.C. 1983, the federal civil rights statute, and 28 U.S.C. § 2241, one of three federal habeas corpus statutes. In the first paragraphs of his introduction to his pleading Blackhouse,

> requests a Temporary Restraining Order to prevent obstruction and witness tampering relative to three (3) Maine Supreme (Law) Court appeals, and also to

3

enable the filing of a Federal lawsuit and criminal charges regarding his 2002 torture and abduction. The victim's CIA-style renditioning to a locked, un-Constitutional "repatterning" and memetic engineering ("brainwashing") facility in Portland, Maine deliberately designed to cause – and did, in fact cause – his permanent and total disability with neurological damage, brain ischemia, and post traumatic stress disorder (or, "PTSD").

A witness to Federal criminal activity, the Plaintiff is now a human-trafficking victim routinely terrorized by corrupt officials commandeering the City of Gardiner's municipal and police operations. He is presently at risk of assault by a landlord who repeatedly threatened the Plaintiff after wrongfully confining him to the apartment building the former illegally acquired via embezzlement and fraudulent HUD activity.

The Plaintiff requires relocation to a safe, private residence – beyond the influence of the Defendants – so that he can develop a victim-witness affidavit regarding the origin of his permanent disability: that is, psychological torture and facility-based abuse similar to that alleged in *Vietnam Veterans of America v. CIA* (presently underway in the Northern District of California). The aggregate activity conducted by the medical criminal crime syndicate in question – from which the Plaintiff's wrongful confinement indisputably emanates – prevents him from pursuing two (2) extant Maine Supreme (Law) Court protective actions; b) appealing the Law Court's dismissal of a third harassment suit against TLC Properties to the US Supreme Court; and, c) bringing a (non-instant) Federal action regarding his 2002 abduction and facility-based torture, which included CIA-, Nazi-, and Soviet-derived mind control and "persuasive" techniques, caused his permanent disability with combat-level PTSD, and violated the Geneva Convention.

(Pleading at 2-3.) He later insists that

a*ll Court intervention* must account for the Plaintiff's routine victimization by the medical crime syndicate in question: under no circumstances does he seek additional exposure to its operators or the State-based "mental health" services they have commandeered. Additionally 235 Water Street is a *Federal crime scene* that should not be occupied by <u>anyone</u> during the course of criminal activity; moreover, Mr. Blackhouse's wrongful confinement to its premises obstructs prosecution of government-derived torture activity as it has only been partially described in *VVA v. VIA*: the Plaintiff should not be forced to respond to queries or instructions made by the criminal operators of TLC Properties <u>under any circumstances whatsoever</u>; similarly, he should not be compelled to interact with the GPD, which obfuscates criminal activity, abets the steering of civil lawsuits, and prevents a full Federal investigation.

(Pleading at 6.)

4

Vietnam Veterans of America v. Price, Civ. No. 4:09-cv-37-CW (N. D. Cal.) is an ongoing lawsuit brought by the Vietnam Veterans of America and six individual plaintiffs with respect to chemical and biological experimentation by the Army Chemical and Biological Defense Command on members of the armed services at the Edgewood Arsenal under project names including Bluebird, Artichoke, MKULTRA, and MKDELTA. "Between 1953 and 1966, the Central Intelligence Agency (CIA) financed a research project, code-named MKULTRA that was established to counter Soviet and Chinese advances in brainwashing and interrogation techniques." C.I.A. v. Sims, 471 U.S. 159, 159 (1985). In his pleading Blackhouse reveals that he is a Phi Beta Kappa and *magna cum laude* graduate of Amherst College "with the acumen to lead the MKULTRA investigations and ensure world-wide facility closure." (Pleading at 17.) There is no indication in his pleading that Blackhouse was ever enlisted in the armed forces, let alone that he was involved in the Edgewood Arsenal human experimentation.

In addition to the injunctive relief requests described in the introductory paragraph, Blackhouse believes that there should be over fifty separate criminal investigations underway with respect to the conspiracy afoot. (Id. at 18-19.) Blackhouse further indicates that he needs this court's intervention in order to pursue review by the United States Supreme Court of unfavorable judgments by the Maine courts (id. at 11 n.5) and notes that, although he has no pending criminal actions against him, he has been forced to pursue civil actions rather than filing criminal charges (id. at 12 n.8). He wants this court to order or otherwise assist him in obtaining a writ of certiorari from the United States Supreme Court for his Blackhouse v. Connelly action and to order a full federal investigation and re-trial of that suit. (Id. at 20.) He then refers to his desire to have this court: restrain the Connellys from stalking him and extorting money from him under the guise of rent obligations; change his locks to a reprogrammable electric pass code

5

system; permanently bar a Ms. Lathrop from 235 Water Street; prevent the sale of the Water Street building during Blackhouse's litigation; and "order a Federal investigation of the Vallee Real Estate usage as it was utilized as a human-trafficking waystation by TLC and Cobbossee Stream Apartments." (Id. at 20-21.) The list of proscriptive relief desired does not end there. Blackhouse seeks an order requiring the Augusta Housing Authority to return all embezzled rent subsidies obtained since Blackhouse's removal from the federal Section 8 voucher program in 2005 and seeks from other defendants the amounts extorted and laundered. (Id. at 22.) Blackhouse also wants the court to order the immediate closure of the Gardiner City Hall and convey that property to Blackhouse's ownership and control and he envisions having this court re-incorporate the City of Gardiner to be operated by his municipal consulting business. (Id.) Connected to this request is Blackhouse's desire that the court direct that the police services of the city be administered by a private security service under his auspices, close the Mad Dog Pub and an establishment called Pastaz, and order the defendants to pay all expenses of his forthcoming lawsuits in this District. (Id. at 23.) Blackhouse also has requests related to transportation and utilities. That is, he wants the court to order reinstatement of his driver's license suspended in retaliation for his complaints about some of his mistreatment, require the defendants to provide him with an automobile for his personal use and to pay all travel-related expenses, enjoin utility companies from disconnecting his services, and ensure that Blackhouse retains continuous access to home-based internet during the pendency of these actions. (Id. at 23-24.) Last but certainly not least with respect to the breadth of his injunctive relief request, Blackhouse desires that this court order the purchase of three categories of real property: residential and non-residential properties in Manhattan and Brooklyn, New York (82 specified), non-residential facilities outside of New York City (5 specified), and the single property on

6

Water Street in Gardiner, Maine in which he suffers the complained-about restraint. (Id. at 24 30.)

Individuals cannot bring charges under the federal kidnapping statute, see Keenan v. McGrath, 328 F.2d 610 (1st Cir.1964); accord Cok v. Consentino, 876 F.2d 1, 2 (1st Cir.1989), and this pleading is clearly not viable under 28 U.S.C. § 2241. Blackhouse's 42 U.S.C § 1983 cause of action in this court is self-constructed as one of conspiracy involving federal, state and non-state actors. Blackhouse has failed to allege a "plausible suggestion of conspiracy" between these various individuals and entities. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566 (2007). See also Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct 1937 (2009); Neitzke, 490 U.S. at 327-28; Purvis v. Ponte, 929 F.2d 822, 826 -827 (1st Cir. 1991). Simply because Blackhouse believes that his factual allegations are true, does not mean that the case ought not be dismissed as frivolous or for failure to state a federal constitutional claim. Other courts have arrived at the same difficult conclusion concerning similar allegations, see, e.g., Mitchell v. Abel, No. 88-2438. 1989 WL 102954, 2 (9th Cir. 1989) (unpublished); Christian v. Moore, No. 3:10-CV-302-FDW-DSC, 2010 WL 3418390, 1 -2 (W.D.N.C. Aug. 30, 2010) (unpublished); Calhoon v. San Diego Police Dept., No. 10cv1629 WQH (POR), L 3184254, 1 -2 (S.D. Cal. Aug. 10, 2010) (unpublished); Hix v. Bush, No. 10-12366, 2010 WL 2560446, 1 (E.D.Mich. June 16, 2010) (unpublished); Lignell v. Catholic Church, No. 2:09-cv-1151-CW-PMW, 2010 WL 2521452, 3 -5 (D. Utah May 6, 2010) (unpublished); compare Denton v. Hernandez, 504 U.S. at 34 (vacating § 1915 dismissal for a determination of whether the frivolous factual allegations could be remedied through more specific pleading) [2]; Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994)

---

[2] It would be entirely inappropriate for this court to attempt to dissect from the overall narrative of this pleading potential 42 U.S.C. § 1983 causes of actions against defendants that might be subject to suit under some theory of rights violation.

("Plaintiffs have not suggested any bizarre conspiracy theories, any fantastic government manipulations of their will or mind, any sort of supernatural intervention."), Peach v. Laborers' Intern. Union of N. A., Civ. No. 09-450-GPM, 2010 WL 502767, 2 -3 (S.D.Ill. Feb. 8, 2010) (unpublished) ("Plaintiff's contention that 'THE MOB took over control of LIUNA is not as absurd as it first seems. … In affirming Judge Zagel's order granting summary judgment to LIUNA and other defendants in the Northern District of Illinois cases, the Seventh Circuit Court of Appeals' opinion begins: The Department of Justice believes that the Laborers' International Union of North America has been infiltrated by mobsters.") (record citation omitted). The recommendation I must make is one of dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Mindful that this is a recommended decision, this conclusion that Blackhouse fails to state a claim clearly answers in the negative Blackhouse's request for a temporary restraining order. See Waldron v. George Weston Bakeries Inc., 570 F.3d 5, 9 (1st Cir. 2009) ("We recently explained that '[t]he propriety of preliminary injunctive relief depends on an amalgam of four factors: (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest.' Coquico [v. Rodroguez-Miranda], 562 F.3d [62,] 66 [1st Cir. 2009]. The first factor-likelihood of success-normally will weigh the heaviest in this four-part decisional calculus. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002).") (emphasis added).[3]

---

[3] There is no reason to detail the obvious reasons why most of Blackhouse's requests for prospective relief are out of the scope of this court's injunctive powers.

## CONCLUSION

I now grant Blackhouse leave to proceed <u>in forma pauperis</u> and I recommend that this complaint be dismissed for failing to state a claim and that the request for a temporary restraining order be denied.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 21, 2010